(46 Misc. Rep. 513.)

### F. J. EMMERICH CO. v. SLOANE et al.

(Supreme Court, Special Term, New York County. March, 1905.)

1. FOREIGN CORPORATIONS—ACTIONS—COMPLAINT.

    In an action by a foreign corporation doing business in the state the complaint is not demurrable on the ground that it fails to state a cause of action for failure to allege due authority to do business.

    [Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 2646, 2647; vol. 39, Cent. Dig. Pleading, § 494.]

2. SAME—LEGAL CAPACITY TO SUE.

    The assignee of a corporation organized in New Jersey sued to recover for breach of contract for the purchase of merchandise to be manufactured for defendant. At the time of the making of the contract plaintiff's assignor had not complied with General Corporation Law, Laws 1892, p. 1805, c. 687, § 15, by obtaining a certificate of authority to do business in the state, although it had paid the license tax required by Tax Law, Laws 1896, p. 856, c. 908, § 181. Held, that the complaint was demurrable for want of legal capacity of plaintiff to maintain the action.

    [Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 2542, 2544, 2646, 2647.]

Action by the F. J. Emmerich Company against W. & J. Sloane. Demurrer to complaint. Sustained.

H. G. K. Heath, for plaintiff.
Bacon & Crane, for defendant.

GREENBAUM, J. Defendant demurs to the complaint for insufficiency of facts constituting a cause of action and for lack of legal capacity of the plaintiff to maintain this action. I have had occasion recently to hold that a failure on the part of a foreign corporation doing business in this state to allege due authority thus to transact business does not affect the substance of plaintiff's claim, and is not available upon a demurrer that the complaint does not state facts sufficient to constitute a cause of action. Portland Co. v. Hall, 95 N. Y. S. 36. The second ground of demurrer, how-

ever, presents a more serious situation for the plaintiff. The complaint alleges that the plaintiff's assignor was a corporation organized under the laws of the state of New Jersey and doing business in the state of New York; that "prior to the commencement of this action the said corporation duly paid the license tax imposed by section 181 of the tax law (Laws 1896, p. 856, c. 908) upon foreign corporations doing business in the state of New York, and duly complied with all the provisions of section 15 of the corporation law (Laws 1892, p. 1805, c. 687), and obtained a certificate in the state of New York authorizing it to do business within this state," and "that the license tax as aforesaid was duly paid to the Comptroller of the State of New York on or about October 17, 1902, but through inadvertence the application to the Secretary of State was not made and the certificate not granted until September 23, 1904." The complaint sufficiently alleges the breach of an agreement made between the plaintiff's assignor and the defendant at the city of New York on or about September 3, 1903, for the purchase and sale of certain merchandise to be manufactured for defendant. It is thus made affirmatively to appear that at the time of the making of said contract plaintiff's assignor had not procured any certificate of authority to do business in this state, although it had long prior thereto (October, 1902) paid into the state treasury a license tax. Section 15 of the general corporation law requires a foreign corporation of the class to which plaintiff's assignor evidently belonged doing business in this state to first procure a certificate of authority to do business, and provides that such foreign corporation "shall not maintain any action in this state upon a contract made by it in this state, unless prior to the making of such contract it shall have procured such certificate." Section 16a of the corporation law (also known as section 181 of the tax law, Laws 1901, p. 1365, c. 558) provides that every foreign corporation, except certain specified corporations of a kind to which plaintiff's assignor did not belong, shall pay to the State Treasurer for the use of the state "a license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state, to be computed upon the basis of the capital stock employed by it within this state during the first year of carrying on its business in this state," and also provides, inter alia, that "no action shall be maintained or recovery had in any of the courts of this state by such foreign corporation without obtaining a receipt for the license fee hereby imposed within thirteen months after beginning business within the state." The curious anomaly is thus presented in this case of the plaintiff's assignor having paid into the state treasury in 1902 the franchise tax required by law of foreign corporations duly authorized to do business in this state, although no certificate of such authority had then been issued to it. So far as the inhibition against maintaining an action may rest upon a failure to comply with the franchise tax law, the demurrer should not be sustained, because it is clear that section 181 of the tax law is a revenue regulation for the benefit of the state, which the latter has the right to

waive. Parmele Co. v. Haas, 171 N. Y. 579, 583, 64 N. E. 440;
Dunbarton Flax Spinning Co. v. Greenwich & J. R. Co., 87 App.
Div. 21, 23, 83 N. Y. Supp. 1054. But the failure to procure a cer-
tificate, as required by section 15 of the corporation law, in view of
the explicit language of that provision that no action shall be main-
tained by a foreign corporation "upon a contract made by it in
this state unless prior to the making of such contract it shall have
procured such certificate," seems to me to be fatal to the plaintiff's
right to maintain this action. In Parmele Co. v. Haas and the
Dunbarton Flax Spinning Co. Cases, cited supra, both section 15
of the corporation law and section 181 of the tax law are apparently
referred to as mere revenue regulations, but a study of those cases
reveals that a consideration of section 15 of the corporation law was
not necessarily involved in either of them, and any apparent char-
acterization of the former act as a "revenue regulation" is obiter
dictum. An examination of said section 15 shows that a foreign
corporation, whose business "to be carried on in this state is such as
may be lawfully carried on by a corporation incorporated under
the laws of this state for such or similar business," is entitled to a
certificate of authority to do business in this state upon compliance
with the requirements of section 16 of the corporation law by filing
with the Secretary of State a sworn copy of its charter, "a state-
ment under its corporate seal particularly setting forth the business
or objects of the corporation which it is engaged in carrying on
or which it proposes to carry on within the state, and a place within
the state which is to be its principal place of business, and designat-
ing in the manner prescribed in the Code of Civil Procedure a per-
son upon whom process against the corporation may be served
within the state." No fee or tax is requisite for the procurement of
a certificate, and it is clear that the provisions just detailed were
primarily designed to regulate and control the business of foreign
corporations in this state for the protection of the citizens of this
state against any unlawful business of a foreign corporation, and
to facilitate service upon such corporation when an action is de-
sired to be brought against it, and that they were not enacted as
mere revenue regulations. The term "revenue law," so far as it
would be here applicable, means "a law providing in terms for
revenue." United States v. Hill, 123 U. S. 681, 686, 8 Sup. Ct.
308, 31 L. Ed. 275. This definition would fit the provisions of sec-
tion 181 of the tax law, but not sections 15 and 16 of the corporation
law. It would therefore follow that the acceptance of a license tax
by an official, to wit, the State Treasurer, in 1902, although seem-
ingly implying an authority in the plaintiff's assignor to do business
in this state, would not constitute a waiver by the state of the gener-
al provisions embodied in sections 15 and 16 of the corporation law,
which makes the issuance by a different official, to wit, the Secretary
of State, of a certificate of authority before the making of a contract
a prerequisite to the right of maintaining an action thereunder. The
prohibition as to bringing an action found in section 15 of the corpo-
ration law is independent of and distinct from that expressed in
section 181 of the tax law, and is so rigidly and inflexibly declared

that I cannot find any rule or reason which will enable me to relieve the plaintiff from the unfortunate consequences of the inadvertence alleged in the complaint.   I am constrained to sustain the demurrer that plaintiff has no legal capacity to sue, with leave to plaintiff to plead anew if it be so advised, upon the payment of costs.

Ordered accordingly.