**UNITED STATES of America**

v.

**The AMERICAN DRUGGISTS'
INSURANCE COMPANY.**

**Civ. No. K–85–955.**

United States District Court,
D. Maryland.

Dec. 23, 1985.

Christopher K. Barnes, U.S. Atty., Nicholas J. Pantel, Asst. U.S. Atty., Robert W. Kern, Robin L. Greenhouse and Will McLeod, Washington, D.C., for plaintiff.

Lorraine K. Phillips, Cincinnati, Ohio and Danny B. O'Connor, Smith, Somerville & Case, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

Hi-Lo Industries, Inc. ("Hi-Lo") was the prime contractor with respect to two government construction projects at Fort Belvoir, Virginia. Pursuant to 40 U.S.C. § 270a, American Druggists' Insurance Company ("ADI") executed performance

bonds as surety for Hi-Lo and its President in connection with those projects.

Herein, the United States seeks to recover from ADI, as surety, withholding and FICA taxes which Hi-Lo failed to pay in connection with the Fort Belvoir projects. The within action was originally filed in the United States District Court for the Southern District of Ohio. In that Court, ADI filed motions to dismiss for lack of subject matter jurisdiction, improper venue, and lack of joinder of needed parties. In the alternative, ADI sought a stay or transfer of the action. On February 26, 1985, Judge Spiegel, of the Southern District of Ohio, transferred this case to this Court without ruling on ADI's other pending motions.

Following that transfer, during a hearing in this Court in connection with each and all of ADI's said motions, counsel for ADI agreed that its motion to dismiss for lack of venue was mooted by the transfer of the within case to this Court. In any event, venue in this Court is appropriate under 28 U.S.C. § 1396 since the taxpayer, Hi-Lo, has its principal place of business in this District.

■ In its motion to dismiss for lack of joinder, ADI contended that Hi-Lo and its President were indispensable parties under Federal Civil Rule 19. That contention may not prevail because since a surety's liability is independent of that of the principal, the principal is therefore not an indispensable party. *See United States v. Peerless Insurance Company,* 374 F.2d 942 (4th Cir.1967); *Jardine, Stephenson, Blewett & Weaver v. United States Fidelity & Guaranty Company,* 91 F.R.D. 284, 287–88 (D.Mont.1981); *see also Horton Company v. International Telephone & Telegraph Corporation,* 85 F.R.D. 369 (W.D.Pa.1980). In any event, "dismissal [for lack of joinder] is warranted only when the defect cannot be cured." 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1359 at 628 (1969). Hi-Lo has its principal place of business in Maryland and its President is a Maryland resident. Both are thus subject to service of

process in this District and may be joined by ADI as third-party defendants in the within litigation.

■ ADI's motion to stay is based on pending litigation between ADI and the United States in the United States Court of Claims. Although that litigation is factually related to the within case, the outcome of that case will have no effect on the within litigation; nor will the outcome of the within case affect ADI's claims in the Court of Claims. Thus, ADI's motions to dismiss for lack of joinder or for a stay of this proceeding may not prevail and will be denied.

Plaintiff alleges subject matter jurisdiction under 28 U.S.C. § 1340 and alternatively under 28 U.S.C. § 1345. Plaintiff's primary position is that although this is in form a suit against a surety on a performance bond, it is in substance a suit for the collection of taxes brought pursuant to 26 U.S.C. §§ 7401 and 7402, and 28 U.S.C. § 1340. ADI argues that because the claim in this suit is based upon rights arising from a performance bond, it is a contract action—not a suit for the collection of taxes—and that sections 7401, 7402 and 1340 do not provide a basis for subject matter jurisdiction.

■ 26 U.S.C. § 7401 grants authority to certain officers within the executive branch of the federal government to bring an action for the collection of taxes and 26 U.S.C. § 7402(a) and (f) confers jurisdiction upon the district courts of the United States to entertain such actions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 28 U.S.C. § 1340 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue...." The question arises as to whether an action on a performance bond brought against the surety to enable the United States to collect federal taxes owed by the principal constitutes the type of internal revenue action covered by sections 7401 and 7402, or 1340.

In *United States v. Hill,* 123 U.S. 681, 8 S.Ct. 308, 31 L.Ed. 275 (1887), construing an earlier statute, Chief Justice Waite wrote:

> the term "revenue law," when used in connection with the jurisdiction of the Courts of the United States, means ... a law providing in terms for revenue; that is to say, a law which is directly traceable to the power granted to Congress by § 8, Art. I, of the Constitution, "to lay and collect taxes, duties, imposts, and excises."

*Id.* at 686, 8 S.Ct. 311.

> The jurisdiction [granted by section 1340] embraces all acts directly attributable to the power granted to Congress by the Constitution to lay and collect taxes, duties, imposts, and excises, but this grant of jurisdiction does not extend to matters arising under state tax laws. It includes actions by the United States to collect taxes.

13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 3580 at 277 (2d ed. 1984) (footnotes omitted).

The Miller Act, 40 U.S.C. §§ 270a–270d, requires the prime contractor on a government contract to provide, *inter alia,* "[a] performance bond with a surety ... for the protection of the United States." 40 U.S.C. § 270a(a)(1). Section 270a further requires that the performance bond provide coverage for taxes owed by the prime contractor and authorizes the United States to sue on the bond for such taxes:

> (d) Every performance bond required under this section shall specifically provide coverage for taxes imposed by the United States which are collected, deducted, or withheld from wages paid by the contractor in carrying out the contract with respect to which such bond is furnished. However, the United States shall give the surety or sureties on such bond written notice, with respect to any such unpaid taxes attributable to any period, within ninety days after the date when such contractor files a return for such period, except that no such notice shall be given more than one hundred and eighty days from the date when a return for the period was required to be filed under the Internal Revenue Code of 1954. No suit on such bond for such taxes shall be commenced by the United States unless notice is given as provided in the preceding sentence, and no such suit shall be commenced after the expiration of one year after the day on which such notice is given.

40 U.S.C. § 270a(d).

Subsection d was adopted as part of the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, § 105(b), 80 Stat. 1125, 1139 (1966). Its purpose was to protect the government's revenues by permitting the United States to sue on a performance bond for such taxes:

> [S]ureties can protect themselves against any losses attributable to withholding taxes by including this risk of liability in establishing their premiums, and lenders by their including the amounts in their loans and taking adequate security. Where they do so, losses now borne by the Government will fall (as it should) on the employers in the form of a larger bonding, or other fee or cost they must pay. Since the withholding taxes are, in true character, a part of the wages, it seems only appropriate that this cost be borne by the employers in the same manner as is true of the net wage costs. Because of this, your committee has concluded that, in the case of a contractor having a public works contract with the Federal Government, it is appropriate that the performance bond required by the Government specifically provide coverage for the withholding taxes payable by the contractor in carrying out the contract. The bill amends the Miller Act to achieve this result.

> Under the bill, a surety is obligated to pay the withholding taxes only if the Government gives him a written notice of the contractor's failure to pay the taxes. Separate notices are required for each taxable period. The Government must give the surety notice of a contractor's

failure to pay the withholding taxes within 90 days after the contractor files his return, or, if the contractor fails to file this return, files it late, or obtains an extension of time for filing, the Government must in any event give the surety this notice within 180 days of the time the return was first required to be filed. In addition, the Government, if it is to bring suit for the failure on the part of the surety to pay the withholding taxes, must do so within 1 year of the time the notice is given to the surety of the unpaid tax liability.

S.Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Ad.News 3722, 3744–45.

The Federal Tax Lien Act "was the first comprehensive revision and modernization of the provisions of the internal revenue laws concerned with the relationship of Federal Tax liens to the interests of other creditors." *Id.* at 3722. While neither the statute nor the legislative history expressly indicates that the Act was adopted pursuant to Congress' taxing powers, a conclusion that such was the case is implicit in the title and nature of the Act. Furthermore, the legislative history suggests that Congress saw an action of the type brought herein as being a way for the United States to collect taxes owed to it by the principal contractor. Thus, while this Court has not been referred to and has no knowledge of any case authority so holding, there seems little question but that subject matter jurisdiction herein is conferred by sections 7401, 7402 and 1340.

■ Alternatively, plaintiff's assertions of jurisdiction under 28 U.S.C. § 1345 would also appear to be sound. That section's grant of subject matter jurisdiction is very broad, and provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

That statute is, in effect, a safety net. "Although other special jurisdictional provisions also may give the district court jurisdiction over some cases brought by the United States, the government need not have specific statutory authorization for a particular action inasmuch as general jurisdiction is conferred by Section 1345." 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3651 at 153 (2d ed. 1985) (footnotes omitted).

ADI seeks to avoid application of section 1345 by arguing that under 28 U.S.C. § 1346, jurisdiction over the within case lies in the Court of Claims, not the District Court. But that argument fails because, by its own terms, section 1346 applies to actions *"against* the United States" (emphasis added). Nothing in section 1346 places any limitations on a District Court's jurisdiction over claims *brought* by the United States under section 1345.

■ Section 1346(c) provides that jurisdiction under section 1346 extends to "any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section." 28 U.S.C. § 1503 grants the Court of Claims jurisdiction over counterclaims and set-offs brought by the United States in an action against it. The United States is not barred from bringing such a counterclaim because it has previously filed an action in district court, asserting the same claims. *Universal Fiberglass Corporation v. United States,* 537 F.2d 393, 399, 210 Ct.Cl. 206 (1975). Thus, while the United States seemingly could have filed a counterclaim in the Court of Claims action brought by ADI, seeking the taxes the United States seeks in the within litigation, the question arises as to whether the United States was required to do so.

■ Where a counterclaim is compulsory, Court of Claims Rule 13(a) requires that it be pleaded in the party's answer. In *United States v. Eastport Steamship Corporation,* 255 F.2d 795 (2d Cir.1958), Judge Waterman held that where the United

States failed to plead a compulsory counterclaim in a Court of Claims action, it could not subsequently bring suit on that cause of action. *See id.* at 801–06. However, Court of Claims Rule 13(a) also provides that "the answer need not state the claim if at the time the action was commenced the claim was the subject of another pending action." That language is almost identical to that of Federal Civil Rule 13(a)(1), under which the "defendant need not assert any counterclaim that already is before another federal court or before a state court at the time plaintiff institutes his action." 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1411 at 58 (1971). Federal Civil Rule 13(a)(1) "is not mandatory; it merely provides defendant with the option of continuing his prior action rather than advancing it as a counterclaim in the second action without fear of it being barred by res judicata if the second action results in a judgment before the claim has been adjudicated in the first action." *Id.* at 59.

The within action was filed on October 25, 1984. ADI filed its action in the Court of Claims on December 5, 1984. Accordingly, the United States was not required to bring the within action as a counterclaim in the Court of Claims, and its failure to do so does not bar the within case from going forward in this Court.

In summary, because subject matter jurisdiction exists in the within case under both 28 U.S.C. § 1340 and § 1345, ADI's motion to dismiss for lack of subject matter jurisdiction will be denied.